STEVENSON v. DUBUQUE LEVEL AND LEAD MINING COMPANY.

*Appeal from Dubuque District Court — Thursday, February 22.*

CORPORATION : POWER OF DIRECTORS.

THIS action was commenced at law to recover a large sum of money, which the plaintiff claims to be due him for services rendered as the superintendent of the business of defendant. The defendant denied

the allegations of the petition, and filed an equitable answer and cross-bill, setting up, substantially, the following defenses and claims against defendant: The plaintiff and others were stockholders and trustees of defendant; other stockholders were not trustees. Plaintiff ceased to be a stockholder a short time before the commencement of this action, and, for some time before, had not been a trustee, but both of these relations he sustained at the time of the acts and transactions set out and complained of in the answer and cross-bill. When plaintiff was appointed superintendent, it was understood and agreed that he should serve without salary. Plaintiff's services were of inconsiderable value, and he never claimed payment therefor until he began this suit. Plaintiff became indebted to defendant for certain stock issued to him, and for the purpose of enabling him to make payment thereof, and for that express purpose alone, he was allowed a salary for one year of $3,000, for which he was given credit on the books of the company, wherein he was charged for the said stock. The answer and cross-bill allege this act of the trustees (plaintiff being one of them, and present and aiding the others) to be void, because it was done in violation of their duty, in excess of their powers and in fraud of defendant and the other stockholders. Plaintiff is charged in the answer and cross-bill with being indebted to defendant for certain personal property of defendant, taken and appropriated to his own use. Other allegations of this pleading need not be set out here. The relief claimed is, that the resolution of defendant's trustees, allowing plaintiff a salary of $3,000 for one year be set aside; that an account be taken between the parties, and judgment be rendered for the amount found due defendant.

Plaintiff, in a lengthy reply to this equitable answer and cross-bill, sets out, among other things which need not now be noticed, a history of the organization of the defendant, and certain agreements between the parties who became stockholders, as well as a particular account of transactions after defendant had a corporate existence. The material allegations of defendant's answer and cross-bill are denied. It is particularly alleged by plaintiff that, before the organization of defendant, the parties who afterward became stockholders agreed with plaintiff that he should become superintendent at a salary, and, upon the organization of defendant, the trustees, in pursuance of that agreement, fixed the salary of plaintiff.

After sundry motions and demurrers the cause was submitted to the court for trial, according to the first method, and a judgment was rendered for plaintiff in the sum of $882. Both parties appeal.

*Monroe & Deery* for the plaintiff—*Wilson & Doud* and *Adams & Robinson* for the defendant.

BECK, Ch. J. — The counsel of the respective parties have presented the case in arguments of considerable length, and the record is by no

means brief. As it appears to us, after careful consideration of all that has been presented, the case is one of no difficulty, and depends wholly upon questions of fact. The real issues made by the pleadings relate to the claims of plaintiff, for services rendered, and on the other hand, the claims of defendant against the plaintiff upon various items of alleged indebtedness. These are determined by the consideration of a few leading facts established by the evidence. We will briefly notice them. The nature of the case does not demand an extended discussion of the evidence.

1. The defendant is a corporation organized under the laws of the State of New York, the original stockholders being residents of the city of New York, except plaintiff who is a citizen of Dubuque, and one other who was a resident of Cleveland, Ohio. The object of the corporation is to prosecute the business of mining lead ore, and more especially to construct and open a tunnel or adit for the purpose of draining certain mineral lands in the vicinity of Dubuque, whereon are new lead mines, the working of which was hindered by the accumulation of water. The incorporation was originated by plaintiff, who induced the other original stockholders to join him in the enterprise. At an interview between all the parties in the city of New York, they entered into an agreement to form an association for the purposes aforesaid, conditioned upon the procurement of leases of sufficient mineral lands near Dubuque, to justify the enterprise. Under this agreement plaintiff was to return to Dubuque, and procure such leases for the use and benefit of the parties to the contract. Plaintiff and one of his associates did accordingly procure leases of lands deemed sufficient to justify the organization of the incorporation. Work was soon afterward commenced in the construction of the adit, plaintiff having been appointed by the corporation superintendent of its operations at Dubuque.

Plaintiff's claim in this suit is based upon the alleged fact that defendant, in employing him as superintendent, agreed to pay him a salary of $3,000 per year. He claims that such a contract was made with him by the defendant, and by the members of the corporation in contemplation of and before its organization. To sustain his claim he introduces his own testimony and that of one other member of the corporation, Sanborn. They both positively testify to the contract made by the defendant, or rather by the trustees of defendant acting as such ; and, also, that it was positively agreed before the organization of the incorporation by all the parties who afterward became members and officers thereof, that defendant should be employed as superintendent, at a salary of $3,000 per year. Plaintiff and Sanborn both distinctly state that the employment, at the salary specified, was made by the trustees of defendant, and, also, by Sanborn before its full organization, by authority of his associates. It is also shown by the same evidence, that the salary of $3,000 per year was a part

of the consideration of plaintiff entering into the enterprise. It is further shown, in support of this claim, that, at a meeting of the trustees of the incorporation, held in February, 1865, during the first year of its operation — the organization being effected in April, 1864 — a resolution, in the following words, was adopted:

"*Resolved*, That the salary of the superintendent of this company be fixed at $3,000 for the present year, ending the second Monday of April, 1865, and the same be placed to his credit on the books of the company."

Plaintiff shows, by the same testimony, that the leases of the mineral lands procured by him were very valuable, and, because of his having brought them with his experience to the company, he was to be paid the salary aforesaid. He gives other evidence, and introduces the testimony of other witnesses, as to facts tending to support his claim.

On the other hand the strong preponderance of testimony is, that no such contract, as is alleged by plaintiff, was made between the parties afterward constituting the corporation, whereby plaintiff was to receive the salary stated, or any other amount. The fact is denied positively by, at least, three of the other five original members of the corporation. If we admit that the contract was made by Sandborn with plaintiff, it cannot be claimed that it will now bind the defendant. It was not assented to by the other parties. And it will hardly be claimed that a contract made by one member of a corporation, before its organization, will bind it when organized. It is established by a strong preponderance of testimony that the foregoing resolution was adopted by the board, as a matter of favor toward plaintiff, and not to carry out any contract. He was indebted to defendant on account of certain stock, which was issued by the defendant after its organization, and distributed to the different stockholders. Defendant was without means, and this fact was known to the other members of the incorporation. For this reason, and as a matter of favor to him, they desired to relieve him of the payment of the amount due on account of the stock so taken by him, and adopted the expedient of allowing him the amount as one year's salary. It will be noticed that, by the terms of the resolution, it is applicable only to the first year of the existence of the defendant. It is shown that plaintiff fully understood that matter.

It is established by a preponderance of evidence that it was expressly agreed between the parties who were the original stockholders, and it will be remembered that plaintiff was one of this number; that no salaries were to be paid the officers of the incorporation; among them were included the superintendent, and that plaintiff was a party to this agreement; and that, after the organization of the defendant, the same agreement and understanding was had between defendant, or defendant's officers, and plaintiff. These facts are estab-

lished by the positive evidence of three of the original stockholders and trustees of defendant. It is also shown that, in 1867, the defendant became embarrassed for want of money to prosecute the work. The members of the incorporation, at plaintiff's suggestion, entered into an arrangement with J. K. Graves to take a large part of the stock, and become the president of defendant; thereby it was expected that means and credit would be procured, whereby the indebtedness of the company, which was pressing, could be paid and the work prosecuted. Plaintiff, it is shown by the testimony of Graves, expressly represented that he agreed, with the officers of defendant, not to make charge for services, and would make no claim upon the defendant therefor. These representations were made to induce Graves to become interested in the company, or were conditions required by him in the transaction.

The resolution of the trustees allowing a salary for one year, is, certainly, operative for that year only. It cannot bind defendant to pay for succeeding years. It must be admitted that, alone, it would raise a presumption of a contract to pay a salary to plaintiff. But this presumption is overcome by the direct and positive evidence of the three trustees and Mr. Graves.

The great value of the mining leases brought by plaintiff to defendant, is urged as a consideration for the contract allowing him a salary, and as a corroborating circumstance in support of plaintiff's evidence. Upon this point the evidence is conflicting. We are unable to draw the conclusion, from the evidence, that these leases were of certain and great value. Their value entirely depended upon the success of the enterprise. If it proves unsuccessful, they are worthless ; if successful, of uncertain value. The same observation is true of the stock of the company. But, as to the leases, it is clearly shown by plaintiff's contract with the other incorporators, he was to obtain them as their agent and for their use. He can claim nothing on account of these leases. The fact that plaintiff went into the corporation without means, and received a larger proportion of stock than any other member, may be accounted for by the consideration of his supposed knowledge of the business, his services in procuring these leases, etc. But it is certainly no evidence to support the claim made by him for a large yearly salary. He claims the salary upon a contract; he must recover by establishing it, and not upon evidence of the previous generous or careless manner of his associates in dealing with him ; nor upon the fact that, in the matter just suggested, he was successful in making an advantageous arrangement. In our opinion, the strong preponderance of evidence is to the effect that plaintiff, under the contract with defendant, was to serve without compensation, and, therefore, is not entitled to recover in this action.

The evidence clearly discloses facts, the consideration of which leads us to the conclusion that this result works no hardship, but is equit-

# 582 APPENDIX.

able. Plaintiff depended for compensation upon the profits accruing to him from the increased value of his stock. His services were not valuable; in fact, from the evidence, we conclude they were trifling. Men as competent as he, it is shown, were constantly engaged in the business of superintending such work at $75 per month. But very little of plaintiff's time was spent in discharging the duties for which he charges so large a sum.

Plaintiff, by his pleadings, claims to recover for four years of actual service at $3,000 per year, amounting to $12,000. He claims, in the way of damages for two years after his discharge, $6,000, to all of which interest is to be added, making his claim against the company over $20,000. Now, he shows in his pleadings that he expended, while superintendent for the defendant, in cash, $31,305. For services in expending this sum of money he claims $12,000 as a salary. He insists that, under his contract with defendant, he was to have for his services more than one-third of all the money expended in the enterprise of the corporation. Such a contract is not commended to equity by its terms. If established it ought to be supported, but we will not presume its existence, upon evidence of the character and weight before us.

2. Defendant claims to recover against plaintiff for certain personal property taken and appropriated by plaintiff to his own use, and for stock of defendant received by plaintiff and not paid for. It is claimed that the resolution above set out, allowing plaintiff a salary for one year, was passed by the procurement of plaintiff, who was, at the time, a trustee of defendant, and is fraudulent, and for that reason, ought to be set aside. It is claimed, too, that the trustees had no authority to allow plaintiff a salary, and for that reason the resolution is *ultra vires* and void.

In regard to the items of property covered by defendant's claim against plaintiff, we may say, briefly, that they are not established by sufficient evidence. We gather from the evidence that plaintiff did appropriate certain property belonging to the defendant, but its description and character is not fully given and the evidence fails to show its value. It is shown that plaintiff was charged on defendant's books with certain property, but this evidence is not sufficient to hold plaintiff liable for the amount of the charge. Defendants insist that a certain amount is admitted to be due defendant in plaintiff's pleadings. But the admission must be taken as there made. He admits the charge in defendant's book, but states it was made to apply upon a just claim which he held against defendant. It would not do to take the admission of indebtedness without also considering the averments made in connection with it in the pleadings.

3. In our opinion the resolution of the trustees, allowing plaintiff a salary for one year, is valid. The evidence fails to establish that it was fraudulently procured by plaintiff. It was passed by the trustees at a

regular meeting and was fully understood by them. We have no doubt upon the question of the trustees' power to pay plaintiff the salary therein allowed. If the best interests of the corporation required the act, and that question was for them to determine, it was within their authority, on the ground that matters of this kind, which pertain to the business of the corporation are within the general scope of the powers of its trustees.

The case was prosecuted as an equitable action, and tried by the first method. It is therefore tried here *de novo,* and final judgment will be entered in this court dismissing plaintiff's petition and defendant's cross-bill. The costs, both of this court and the court below, will be paid by plaintiff. The judgment of the district court is

Reversed.